Filed 9/7/16  John W. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOHN W., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF FRESNO COUNTY, <br><br> Respondent; <br><br> FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Real Party in Interest. | F073826 <br><br> (Super. Ct. Nos. 15CEJ300027-1 & 15CEJ300027-2) <br><br><br> **OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Gary Green, Commissioner.

JOHN W., in pro. per., for Petitioner.

No appearance for Respondent.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]     Before Levy, Acting P.J., Franson, J. and Peña, J.

John W. (father) in propria persona seeks extraordinary writ relief from the juvenile court's orders terminating his reunification services and setting a Welfare and Institutions Code section 366.26 hearing[1] as to his now five- and four-year-old sons, Adam and Levi, respectively. We conclude his petition fails to comport with the procedural requirements of California Rules of Court, rule 8.452[2] and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

In January 2015, the Fresno County Department of Social Services (department) took then three-year-old Adam and two-year-old Levi into protective custody after father left them unattended at a fast food restaurant for approximately two hours. Father and the children's mother, Danielle, were married but had been separated for about a month and father was caring for the children alone. He claimed Danielle had a mental illness. He denied having any mental health problems but said he was "slow."

The juvenile court ordered father and Danielle to participate in reunification services. Father's services plan required him to participate in parenting instruction and mental health and domestic violence counseling. The department placed the children in foster care.

After six months of services, father had completed a parenting program and was participating in individual therapy and a domestic violence program. He also regularly visited the children and was loving and affectionate with them. However, he had difficulty managing the children's behavior, especially Adam who had been diagnosed with autism. Father reportedly stood by as Adam banged his head and endangered himself. The department recommended the court terminate reunification services and set a section 366.26 hearing.

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     Rule references are to the California Rules of Court.

2

In November 2015, following a contested six-month review hearing, the juvenile court found that the department did not provide reasonable reunification services and continued the matter to the 12-month review hearing. The department subsequently referred father to Dr. Timothy Cox for therapeutic supervised visitation to help him understand the children's delays and adequately supervise them. The department also referred father to a specialist from Central Valley Regional Center (CVRC) to help him understand and parent an autistic child.

Over the ensuing four months, father made progress in his individual therapy. He was more assertive and better able to manage his anxiety and communicate how he felt. He continued, however, to have difficulty understanding concepts and required extra help. He also had difficulty controlling his anger. As an example, he harassed the children's care provider during a decision meeting with departmental staff and angrily left the meeting. He repeatedly threatened the care provider that he was going to call child protective services if anything happened to his children and told her she and her husband were bad people because they smoked and drank. He finally stood up, pointed at the care provider and stated "I can't stand you" and walked out. In January 2016, father followed the care provider to her car following a visit even though he was told not to by Dr. Cox.

In March 2016, Dr. Cox advised the department that he was considering terminating father's therapeutic visits because he did not seem to have learned anything from his services and was unable to retain information. In addition, Dr. Cox feared for his safety while with father and locked his office door after father left their sessions. Dr. Cox stated that father became aggressive when criticized and threatened to report him to the judge. In April, Dr. Cox terminated father's visits because of father's aggressive behavior.

In its report for the 12-month review hearing, the department recommended the juvenile court terminate father and Danielle's reunification services and set a section

3

366.26 hearing. Though father had completed his court-ordered services, he had not demonstrated the ability to safely parent the children. Dr. Cox reported that father was unable to retain even "basic" parenting skills. Dr. Cox opined that father already lacked the parenting skills to safely manage the children and cautioned that the situation would grow more dire as the children grew older and their needs became more complex.

In May 2016, the juvenile court conducted a contested 12-month review hearing on the department's recommendation to terminate father's reunification services. Danielle did not appear and her whereabouts were unknown. Father testified he worked hard, had done everything asked of him and wanted to reunify with his sons because he loved them with all his heart. He said he received social security income and had three children who he raised to adulthood. Father described techniques he learned in his various services to better parent the children and manage Adam and his autism. He also explained that he walked out of the meeting because he had a conflict with the care provider and he followed the care provider to her car because he wanted to help put the children in the car.

The juvenile court found it would be detrimental to return Adam and Levi to father's custody. The court also found the department provided father reasonable reunification services and terminated them, stating "[I]t does appear that [father] has plateaued in his abilities to handle Adam and Levi. There is no showing of what benefit additional or different services would provide to him." The court set a section 366.26 hearing to implement a permanent plan for the children.

## DISCUSSION

Father seeks an order from this court directing the juvenile court to return Adam and Levi to his custody or alternatively to continue reunification services. He contends he completed all of his court-ordered services and that the department took advantage of him because of his disability.

4

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Thus, absent a showing of error, this court will not disturb them. A parent seeking review of the juvenile court's orders from the setting hearing must, as father did here, file an extraordinary writ petition in this court on form JV-825 to initiate writ proceedings. The purpose of writ proceedings is to allow this court to review the juvenile court's orders to identify any errors before the section 366.26 hearing occurs. Rule 8.452 requires the petitioner to identify the error(s) he or she believes the juvenile court made. It also requires the petitioner to support each error with argument, citation to legal authority, and citation to the appellate record. (Rule 8.452(b).)

Father did not assert any juvenile court error in his writ petition. He left that portion of the JV-825 blank. The only statement that comes close to an assertion of error is his claim that the department took advantage of him because of his disability. However, the record does not support father's claim. On the contrary, the department provided him extra support through Dr. Cox and the CVRC specialist.

When the petitioner fails to identify any legal error, as is the case here, there is nothing for this court to review. Under such circumstances, we dismiss the petition as facially inadequate for review and we do so in this case.

## DISPOSITION

The petition for extraordinary writ is dismissed. This opinion is final forthwith as to this court.

5